IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DAVID JAY HANNAH,**

    **Plaintiff,**

    v.                                  CASE NO. 18-3204-SAC

**SAM CLINE, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER
## AND ORDER TO SHOW CAUSE

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed *in forma pauperis*. (Doc. 3.) At the time of filing, Plaintiff was incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF").

**I. Nature of the Matter Before the Court**

Plaintiff alleges that Defendants have retaliated against him and persecuted him for practicing his Wiccan religion. Plaintiff alleges that Defendants have censored religious literature and "essential primary texts" for his religion, and rubber-stamped all complaints without any investigation. Plaintiff alleges that the unlawful censorship violates his First Amendment rights and violates RLUIPA. Plaintiff also alleges retaliation, discrimination and harassment.

Plaintiff alleges that Defendant Escobar ransacked Plaintiff's cell in retaliation for Plaintiff filing a complaint against her. Plaintiff alleges that Escobar destroyed his altar and personal religious materials for his Wiccan religion. Plaintiff alleges that Defendants violated RLUIPA by favoring mainstream religions and promoting them while discriminating against Wiccan practices. Plaintiff also alleges that Defendants are conspiring to conceal their actions. Plaintiff alleges that he was denied a visit with his mother and her two friends "out of malice and

1

spite."

The attachments to Plaintiff's Complaint show that Defendants censored one book—"Fourteen Things Witches Hope Parents Never Find Out"—and gave Plaintiff the option of either mailing the book to a third party or destroying it. (Doc. 1–1, at 9.) The book was rejected because "the content . . . poses a threat to the safety and security of correctional facilities" and "portrays religion in negative way." *Id*. at 11. The Secretary of Corrections indicated that the publication was withheld "due to content that meets the criteria for censorship of mail, in whole, or in part, as described in K.A.R. 44-12-601." *Id*. at 8. The attachments also show that Plaintiff's alter was disposed of because it was made out of items that Plaintiff did not purchase, and the cardboard items were found to be a fire hazard. *Id*. at 12.

Plaintiff names as defendants: Sam Cline, LCF Warden; (fnu) Escobar, Unit Team B-2 Counselor at LCF; Danielle Walters, Mail Room at LCF; Bill Shipman, Administrative Office at LCF; Douglas W. Burris, KDOC Secretary; and (fnu) Almond, LCF Chaplain. Plaintiff seeks compensatory damages, punitive damages, nominal damages, and injunctive relief.

The Court found that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate officials of LCF. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court ordered the appropriate officials of LCF to prepare and file a *Martinez* Report, noting that once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915. At the direction of the Court, counsel for the Kansas Department of Corrections ("KDOC") filed the *Martinez* Report (Doc. 18), and Defendants filed an Answer (Doc. 19).

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a

claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

### III. Discussion

#### 1. The *Martinez* Report

The *Martinez* report developed as a means "to ascertain whether there is a factual as well

as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)).

The Court has examined the commendably thorough *Martinez* Report and, for the reasons that follow, is considering the dismissal of this action. Plaintiff will be given an opportunity to respond to the *Martinez* Report and is directed to show cause why dismissal should not be entered.

The *Martinez* Report and attachments set forth the regulations providing for the primary texts and allowable religious items for the Wiccan religion, and the policies and procedures for requesting an exception. The *Martinez* Report also provides that:

> On May 10, 2018, Defendant Escobar, a unit team counselor at LCF, was searching Plaintiff's cell for contraband and noted that Plaintiff continued to possess excessive amounts of cardboard and homemade shelves as well as a religious altar despite numerous prior warnings to remove these items. When Defendant Escobar told Plaintiff to remove the excessive amount of cardboard in his cell along with all the homemade shelves and his unauthorized altar, Plaintiff became argumentative and shouted at her. She informed Plaintiff that he was not allowed to have anything that was homemade and that certain items in his altar were not allowed. Plaintiff stated that it was part of his religion and he would make sure to grieve the issue if he was forced to destroy his altar. Plaintiff was asked to show property receipts for the items in question. He refused and stated that it was all approved through the IMPP. Defendant Escobar then asked Defendant Almond (the facility chaplain) if he would examine and verify if the items on the altar were allowed in the inmate's cell. See Exhibit E (Affidavit of Brenda Escobar) at ¶¶ 3-10.
> Defendant Almond, accompanied by administrative assistant, Jennifer Burnett, visited Plaintiff's cell to examine the items at issue. The items were made of excessive amounts of cardboard and included items that were hanging on the wall.

> Plaintiff had not previously notified the chaplain that he was claiming any of this property as religious items. None of the items had come to Plaintiff through the chaplain as required by the IMPP and the large amount of cardboard used to construct the items constituted a fire hazard. Ex. C at ¶¶ 4-5.
>
> Defendant Almond asked Plaintiff to dispose of the items and then met with Plaintiff to discuss other options for an altar or a substitute. He explained to Plaintiff that a request for accommodation was required for any handmade religious items and gave Plaintiff a copy of the relevant policy. Despite this, Plaintiff never submitted a request for accommodation for these items or for any other items as religious property as required by the IMPP. Ex. C at ¶¶ 6-10.
>
> Defendant Almond told Defendant Escobar that, after viewing Plaintiff's cell, the items were not allowed unless Plaintiff could provide a property receipt for the items or an approved Request for Accommodation form that allowed him to have the items. He also told her that the cardboard items could constitute a fire hazard. Ex. C at ¶¶ 11-12; Ex. E at ¶ 11-12.

(Doc. 18, at 5–6.)

The *Martinez* Report also provides that the censored book—"Fourteen Things Witches Hope Parents Never Find Out"—"is not a primary religious text for Wiccans" and rather "it is a book which pits Christians against Wicca and witches." *Id*. at 9. The Report provides that the book:

> portrays witches in a negative light and alleges that witches are child predators and that children should not be part of the Wiccan faith. In addition, contrary to Plaintiff's allegation, the book was not censored to favor Christianity over Wiccan. If that were true, the book would not have been censored. It was censored to reduce potential friction that often occurs between religious organizations with differing beliefs.

*Id*. at 9.

Regarding Plaintiff's allegations that he was retaliated against when his mother and two friends were turned away from visiting Plaintiff after they travelled several hours to visit him, the Report provides that: "There is no evidence whatsoever to support this claim. Plaintiff was

approved for a special visit with his mother and two friends on June 2, 2018. The visitors, however, did not come to the facility for the visit. They were not turned away or denied the visit. See Exhibit H (Affidavit of Oletha Kane)." *Id.*

Defendants also allege that Plaintiff's claims for injunctive relief are moot because Plaintiff is no longer in KDOC custody. According to the Kansas Adult Supervised Population Electronic Repository ("KASPER"), Plaintiff's current status is "Post Incarceration."[1]

### 2. Injunctive Relief

Plaintiff seeks injunctive relief. Because Plaintiff is no longer incarcerated at LCF, his request for injunctive relief is moot. Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*. Consequently, "[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 1974). The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement. *See Green v.*

---

[1] *See* https://kdocrepository.doc.ks.gov/kasper (last visited February 25, 2020).

*Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983 claim for injunctive relief moot); *see also Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015) (unpublished) (holding that "RLUIPA claims regarding prison conditions become moot if the inmate plaintiff is released from custody.") (citations omitted).

The mootness doctrine is based on the reality that even if the inmate receives injunctive relief, the defendants from the former prison would be unable to provide the relief to plaintiff. Because Plaintiff is no longer incarcerated at LCF or with the KDOC, his claims for injunctive relief are moot and subject to dismissal.

### 3. Damages

Any request for damages for mental or emotional injury is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury. Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Although it is unclear whether any potential claim for property damage could survive § 1997e(e), Kansas prisoners have an adequate state post-deprivation remedy. *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property); *Smith v. Colorado Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth

Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees."); *see also Ybanez v. Scott*, 2015 WL 1258290, at *7 (D. Colo. March 17, 2015) (noting that the 10th Circuit does not appear to have addressed the issue of whether 1997e(e) bars an award of compensatory damages for the loss of property, but in *Allen v. Reynolds*, 475 F. App'x 280, 283–84 (10th Cir. 2012), the court appeared to reject, in *dicta*, an argument that an inmate's demand for compensatory damages for the destruction of personal photographs survived the lack of a physical injury under the PLRA); *see also Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (finding in case involving confiscated magazines that inmate did not suffer physical injury in connection with his constitutional claims, and allegation that personal property was lost, confiscated, or damaged does not state a claim where remedy is in state court).

Plaintiffs also seeks punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Plaintiff presents no plausible basis for a claim of punitive damages because he alleges no facts whatsoever establishing that any defendant acted with a sufficiently culpable state of mind. Plaintiff's request for punitive damages is subject to dismissal.

**4. Retaliation**

Plaintiff fails to state a claim of retaliation. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith*

*v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of the claims. Plaintiff's allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive.

### 5. Conspiracy, Harassment and Discrimination

Plaintiff's bare allegations of harassment, conspiracy and discrimination, fail to state a claim upon which relief may be granted. Plaintiff fails to assert factual allegations in support of these claims. To state a claim for conspiracy, Plaintiff must include in his complaint enough

factual allegations to suggest that an agreement was made. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). A bare assertion of conspiracy, absent context implying a meeting of the minds, fails to raise a right to relief above the speculative level. *Id.* Here, Plaintiff provides no factual information whatsoever to demonstrate any type of agreement was made between anyone. Such conclusory allegations fails to state a plausible claim for relief and are subject to dismissal.

## IV. Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff has also failed to provide the Court with a change of address as required by Local Rule 5.1(c)(3). The Rule provides that any notice mailed to the last address of record of a *pro se* party is sufficient notice. However, the Court will direct the clerk to send this Memorandum and Order and Order to Show Cause to Plaintiff's address of record as well as to the address listed in Defendants' Certificate of Service (Doc. 19, at 4).

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **March 23, 2020,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

The clerk is directed to send this Memorandum and Order and Order to Show Cause to Plaintiff's address of record as well as to the address listed in Defendants' Certificate of Service (Doc. 19, at 4).

**IT IS SO ORDERED.**

**Dated February 26, 2020, in Topeka, Kansas.**

<u>s/ Sam A. Crow</u>
SAM A. CROW
U. S. Senior District Judge